IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IVAN MALOV,                          )
                                     )
        Petitioner,                  )
                                     )
    v.                               )          1:26-cv-324 (LMB/LRV)
                                     )
KRISTI NOEM, et al.,                 )
                                     )
        Respondents.                 )

## ORDER

Petitioner Ivan Malov ("Malov"), a native and citizen of Russia, has filed a two-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since October 19, 2025. Specifically, he alleges that his continued detention violates his due process rights (Count I) and the Immigration and Nationality Act (Count II).

Malov is currently detained at the Farmville Detention Center, which is within the Court's jurisdiction and the basis upon which he is suing Jeffrey Crawford, the warden of the Farmville Detention Center. Malov has also sued Russell Hott, the Acting Director of ICE's Washington Field Office; Todd Lyons, the Acting Director of ICE; Kristi Noem, the DHS Secretary; and Pamela J. Bondi, the Attorney General (collectively, "the federal respondents"). For the reasons discussed in this Order, the Court finds that the process the federal respondents used to revoke Malov's parole violated the Fifth Amendment. Accordingly, Malov's Petition will be granted as to Count I, and the federal respondents will be ordered to release him from custody immediately.

I.

The following facts are undisputed.  On January 3, 2023, Malov, his wife, and their child were encountered by U.S. Customs and Border Protection agents near the San Ysidro Port of Entry in California.  [Dkt. No. 9-1] at 3.  They were taken into custody and transported to the Imperial Beach Border Patrol Station.  Id.  On January 4, 2023, the family was paroled under § 212(d)(5) of the Immigration and Nationality Act "due to detention capacity issues within the San Diego Sector."[1]  Id.  Malov's immigration documents contain the following stamp:



[Dkt. No. 1-3] at 2.  Although the stamp indicates that Malov's parole purportedly expired on March 4, 2023, there is nothing in the record before the Court indicating that DHS contacted Malov upon the purported expiration of his parole, and Malov appears to have remained on parole without incident until he was arrested by ICE on October 19, 2025, at which time he indicated that he believes he will face harm if he returned to Russia, [Dkt. No. 1-2] at 1.

Malov filed his Petition on February 3, 2026.  [Dkt. No. 1].  The Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to file a responsive

---

[1] Section 212(d)(5) of the Immigration and Nationality Act is codified at 8 U.S.C. § 1182(d)(5). That provision provides that certain noncitizens "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)).

2

pleading. [Dkt. No. 2]. In response, the federal respondents filed a notice indicating that the Petition does not differ in any material fashion from Ceba Cinta v. Noem, et al., 1:25-cv-1818 (E.D. Va.), which ordered that the federal respondents provide the petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) because he had been living in the United States for several years before being detained by ICE. [Dkt. No. 7]. Upon reviewing the Petition, the Court determined that the issue presented "is not whether petitioner is entitled to a bond hearing under 8 U.S.C. § 1226(a) . . . but rather whether petitioner's parole was revoked in a manner consistent with 8 C.F.R. § 212.5(e) and the Due Process Clause." [Dkt. No. 8]. Accordingly, the Court ordered that the federal respondents file a responsive pleading. Id. On February 17, 2026, the federal respondents filed a response to the Court's Order. [Dkt. No. 9].

II.

The central question posed in this Petition is whether Malov's continued detention violates the Fifth Amendment. In Pineda-Berrios v. Lyons, the Court analyzed the procedures the federal respondents used to revoke a noncitizen's humanitarian parole under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), and concluded that the unilateral revocation of the noncitizen's humanitarian parole without "individualized consideration" and an "opportunity to be heard" deprived him of his due process rights. 2026 WL 384159, at *5. That same analysis applies here.

First, Malov has a significant liberty interest in remaining out of custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). In the parole context, "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the

3

parolee and often on others." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Subject to the conditions of parole, a parolee "is free to be with family and friends and to form the other enduring attachments of normal life." Id. And noncitizens paroled into the United States under § 1182(d)(5)(A) may be eligible for certain federal public benefits, 8 U.S.C. §§ 1611(a), 1641(b)(4); can apply for adjustment of status under 8 U.S.C. § 1255(a); and can seek employment authorization, 8 C.F.R. § 274a.12(c)(11).

As the Court explained in Pineda-Berrios, Malov's liberty interest "does not vanish simply because DHS's authority to revoke parole is partially discretionary." 2026 WL 384159, at *6. Nor does the March 4, 2023 expiration date "somehow obviate the need for the government to provide an individualized hearing prior to detaining the parolee." L.M. v. Noem, 2026 WL 103231, at *13 (D. Nev. Jan. 14, 2026). For one, 8 C.F.R. § 212.5(e) clarifies that DHS cannot simply tack on an expiration date to the grant of parole without considering the parolee's individualized circumstances and whether the purposes of parole would be accomplished by the expiration date. See Orellana v. Francis, 2025 WL 2402780, at *5 (E.D.N.Y. Aug. 19, 2025). Moreover, Malov continued to "establish[] a life for himself" in the United States after the expiration date passed "based on the implied promise that he would remain released in spite of the dated expiration." Martinez-Gutierrez v. Noem, 2026 WL 279890, at *3 (E.D. Cal. Feb. 3, 2026). For these reasons, Malov's "liberty interest did not expire along with his parole." Omer G.G. v. Kaiser, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025).

Second, the procedures used to revoke Malov's parole significantly risked erroneously depriving him of his liberty interest in remaining out of custody. As was true in Pineda-Berrios, the parole authorization's expiration date did not adequately protect Malov's liberty interest. To

4

have qualified for humanitarian parole, DHS had to have determined that Malov did not pose a safety or flight risk. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017). There is absolutely no evidence in this record that any DHS officer based the March 4, 2023 expiration date "on any determination that the risk-reward calculus would change after" that time period. Qasemi v. Francis, 2025 WL 3654098, at *13 (S.D.N.Y. Dec. 17, 2025). Nor has any immigration officer "articulated that the humanitarian reasons and public benefit that supported [Malov's] release no longer exist." Id. To the contrary, on the record before the Court, there is no evidence of Malov committing any crime during the 33 months he has remained in society and no indication that he missed any required appointments with immigration officials or violated any of the conditions of his parole. Therefore, on this record, it is easy to see how any additional procedure would be valuable where, as here, "the only procedure required for the deprivation of [petitioner's] liberty appears to be an unreviewable decision by an agency official subject to no formal procedures or review." L.M., 2026 WL 103231, at *13.

Third, the federal respondents' interest in detaining Malov without any semblance of due process is nonexistent. Of course, they have "no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by . . . alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). And although the federal respondents have a "weighty" "interest in efficient administration of the immigration laws," Landon v. Plasencia, 459 U.S. 21, 34 (1982), they "remain subject to an obligation to 'effectuate [Malov's] detention in a manner that comports with due process,'" Abadin v. Noem, 2026 WL 217148, at *4 (W.D. Wash. Jan. 28, 2026) (citation omitted). Nothing in this record explains why the federal respondents are "unable to efficiently enforce the immigration laws . . . while also affording

5

individuals with their 'core' due process right: 'notice and an opportunity to be heard.'" Make the Rd. N.Y. v. Noem, 2025 WL 2494908, at *19 (D.D.C. Aug. 29, 2025) (quoting LaChance v. Erickson, 522 U.S. 262, 266 (1998)).

In sum, although the federal respondents have discretion to release a noncitizen on parole, that does not mean they can revoke that parole on a mere whim, which is what has happened in this case. Accordingly, Malov's continued detention violates the Due Process Clause, and he must be released from custody immediately.

III.

For all the reasons stated above, Malov's Petition, [Dkt. No. 1], is GRANTED as to Count I, and it is hereby

ORDERED that the federal respondents release Malov from custody with all his personal property subject to the conditions of his preexisting parole, except for the expiration date, no later than 4:00 p.m. on March 2, 2026; and it is further

ORDERED that the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Malov unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of parole, except for the expiration date; or (3) his parole has been lawfully revoked in a manner consistent with 8 C.F.R. § 212.5(e) and the Due Process Clause.

The Clerk is directed to enter judgment in Malov's favor pursuant to Federal Rule of Civil Procedure 58, forward a copy of this Order to counsel of record, and close this civil action.

Entered this 2nd day of March, 2026.

Alexandria, Virginia

_____ /s/
Leonie M. Brinkema
United States District Judge

6